[No. A067114. First Dist., Div. One. June 30, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
ERNEST DWAINE BUTLER, Defendant and Appellant.

458

**COUNSEL**

Lanny Jay, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and Rene A. Chacon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

STEIN, J.—Ernest Dwaine Butler was charged with first degree burglary (Pen. Code, §§ 459-460, subd. 1) and grand theft (Pen. Code, § 487, former subd. 1.) A jury returned a verdict acquitting appellant of the burglary charge, but finding him guilty of grand theft. Appellant appeals from the judgment entered upon this verdict. His sole contention on appeal is that he was deprived of the effective assistance of counsel when his attorney, who had filed a motion to dismiss for violation of appellant's right to a speedy trial, later apparently abandoned the matter. We will affirm the judgment, finding that the motion to dismiss would have been denied and that counsel's failure to pursue the motion, accordingly, did not prejudice appellant's defense.[1]

### FACTS

Appellant's father, Chester Butler, and his father's wife, Carol Butler, were saving quarters for the honeymoon they had not yet enjoyed. They kept the quarters in a five-gallon water bottle behind the nightstand in their bedroom. By mid-March 1990, the bottle contained $2,080.50 in quarters. Appellant, then in his early 30's and suffering from a severe drinking problem, had been living with the Butlers over a 4-month period in late 1989 and early 1990. Appellant slept on the couch in the living room. In early March 1990, Carol Butler told appellant to leave, and he did indeed leave. On March 17, Chester Butler noticed that the nightstand had been rearranged in some way, and discovered that the bottle of coins was missing. Everyone had been out of the house during the day of March 16th. The doors of the house had been locked, but a back bedroom window was open.

A neighbor, John Ornelas, knew appellant by sight, and knew he was living with the Butlers in early 1990. Ornelas reported that on March 16 he noticed a strange car make a U-turn and park in front of the Butler residence. The car was an older model, light blue in color. About 15 minutes later Ornelas saw appellant and another man walking down the "the driveway carrying this jug, one of these five gallon plastic glass containers. And I

---

[1]Appellant also has filed a petition for a writ of habeas corpus seeking relief for the ineffective assistance of counsel. We have denied the petition by order filed this day.

didn't know what was in it but I could tell it was heavy." The men got in the car and drove off. A second neighbor, Joseph Manzo, reported that on March 16, 1990, he, too, noticed an older car park in front of the Butler residence. He later saw two men in the backyard of the Butler residence. One of them appeared to be the man who had been living there for a short period of time, and who Manzo had heard was Chester Butler's son. The men were standing beside a window to the house.

Approximately one week after the theft the Butlers learned that appellant had shown up at a McDonald's restaurant. They called the police and then confronted appellant. Appellant told them he did not remember taking the bottle, but that he would like to "make restitution" to them. The police arrived, but appellant was not then arrested. Indeed, the Butlers did not see him for another two years. About eight weeks after they confronted appellant at the restaurant, however, he sent them a card saying he was sorry and wanted to make restitution for what he had done. He enclosed a money order for $50. The Butlers returned the money order.

Appellant testified at trial. He testified that he is an alcoholic who has a severe drinking problem. He remembered being kicked out of the house, and meeting "some guy" in a bar about a week later. He was intoxicated at the time, and, indeed, had been drinking for a few days. He thought this man, who he believed was named Al or Alfred, had a little blue car. Appellant wanted to go to his father's house to get a change of clothing, and he remembered asking Al to drive him there. Appellant knew that at some point he was headed towards his father's house, and he believed he did go there and change his clothes, but he was unable to recall anything else. When his parents confronted him at the McDonald's restaurant he stated he wanted to make payments to them "Because I wasn't—I know that I went by the house that day that they were talking about and I brought somebody with me. And I don't really know what happened from there. So I figured if it happened it happened and I'll go ahead and pay for it, pay for it. If I made a mistake of being drunk and going into their house, then it happened."

The jury convicted appellant of grand theft, but acquitted him of the burglary charge, presumably concluding that he did not enter the residence with the intent of stealing the quarters. The court suspended imposition of sentence, and imposed three years of probation on condition he serve one year in county jail. The court further ordered that appellant be placed in a residential treatment program as soon as there was an opening.

## PROCEDURAL BACKGROUND

As noted, appellant was not arrested at the McDonald's restaurant. After he left the restaurant he apparently enrolled in a "detox facility" and then in

a program at the Salvation Army in San Jose. Other than filing a felony complaint against appellant the authorities took no action against him until July 27, 1993, when they filed the information against him. On October 22, 1993, appellant filed a motion to dismiss the information for the failure to afford him a speedy trial. At a hearing on November 3, 1993, the court granted defense counsel's request for a continuance to permit her to respond to the points and authorities filed by the district attorney. Appellant apparently failed to appear on November 15, and a bench warrant was issued for him. The warrant was recalled upon his appearance on April 29, 1994, and the matter proceeded to trial without any further action taken on the motion to dismiss.

## DISCUSSION

## I

### Ineffective Assistance of Counsel

Appellant contends that his attorney's failure to pursue the motion to dismiss deprived him of the effective assistance of counsel, entitling him to reversal of the judgment. The principles of law relating to such a contention were summarized by the court in *People* v. *Haskett* (1990) 52 Cal.3d 210, 248 [276 Cal.Rptr. 80, 801 P.2d 323]: "Defendant bears the burden of proving ineffective assistance of counsel. [Citation.] To establish constitutionally inadequate representation, the defendant must show that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's representation subjected the defense to prejudice, i.e., there is a reasonable probability that but for counsel's failings the result would have been more favorable. [Citations.] When a defendant makes an ineffectiveness claim on appeal, the appellate court must look to see if the record contains any explanation for the challenged aspects of representation. If the record sheds no light on why counsel acted or failed to act in the manner challenged, 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation' [citation], the contention must be rejected." The appellate record contains no explanation by defense counsel for failing to pursue the motion to dismiss.[2] Appellant argues that the record discloses no tactical reason for failing to pursue the motion, and argues further that the motion was meritorious and would have been granted had it been pursued. The Attorney General argues that the

---

[2]The petition for the writ of habeas corpus also contains no declaration by defense counsel. Appellate counsel reports that he spoke with trial counsel who claimed no strategic or tactical reason for failing to pursue the motion to dismiss.

motion lacked merit and that there could be a tactical choice for failing to pursue it. We need not address the merits of this latter argument as we have concluded that the motion indeed lacked merit and would not have been granted. It follows that appellant suffered no prejudice from counsel's failure to press it. (See *People* v. *Eckstrom* (1974) 43 Cal.App.3d 996, 1000-1004 [118 Cal.Rptr. 391].)

## II

### *Speedy Trial*

■ Citing authorities such as *Barker* v. *Wingo* (1972) 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182], concerned with the right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution, appellant argues that the trial court would have granted his motion to dismiss for the delay in bringing the action to trial. Following the balancing test developed by the court in *Barker*,[3] appellant contends that the trial court would have been required to presume that the delay prejudiced him and, accordingly, would have had no choice but to dismiss the information filed against him.

■ ■ The present case, however, involves *preaccusation* delay. The Sixth Amendment's speedy trial right is not triggered until a formal indictment or information is filed, or the defendant is arrested. (*United States* v. *Marion* (1971) 404 U.S. 307, 318-320 [30 L.Ed.2d 468, 478-479, 92 S.Ct. 455].) "On its face, the protection of the Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution. These provisions would seem to afford no protection to those not yet accused, nor would they seem to require the Government to discover, investigate, and accuse any person within any particular period of time." (*Id.* at p. 313 [30 L.Ed.2d at p. 474].) Moreover, the danger of preaccusation delay, as existed here, is distinct from that of postaccusation delay, and, accordingly, any test designed to balance interests under the Sixth Amendment has no application to preaccusation delays. The danger of preaccusation delay is the danger of loss

---

[3]The court in *Barker* identified some of the factors which should be considered in determining whether a particular defendant has been deprived of his or her Sixth Amendment right to a speedy trial. The length of the delay, without any demonstration of resulting prejudice, acts as a triggering factor. Unless there is some delay which is presumptively prejudicial, there need be no Sixth Amendment inquiry. Once an inquiry has been triggered the court deciding if the action should be dismissed should consider the reason the government assigns to justify the delay, whether and how the defendant (who may have much to gain from the delay) asserts the right to a speedy trial and whether the delay has caused actual prejudice to the defendant. (407 U.S. at pp. 530-532 [33 L.Ed.2d at pp. 116-118].)

of memory or evidence affecting the defendant's right to a fair trial. Although postaccusation delay also affects the defendant's right to a fair trial, its primary danger is the effect it has on the liberty of the accused individual. For this reason, among others, a lengthy postaccusation delay almost always is prejudicial. "We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent. Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." (*Barker* v. *Wingo, supra*, 407 U.S. at pp. 532-533 [33 L.Ed.2d at p. 118], fn. omitted.) That the length of a delay may carry a presumption of prejudice for purposes of triggering a Sixth Amendment inquiry is not particularly relevant to the question of whether preaccusation delay should be deemed prejudicial. Moreover, the balancing test developed by the court in *Barker* accordingly and necessarily considers not only a defendant's right to a fair trial, but the interest in penalizing the government for lengthy and unnecessary delays affecting the defendant's postaccusation liberty. The test has no application here.

 It does not follow that federal law wholly fails to protect a defendant from the danger of loss of memory or other evidence potentially resulting from pre-accusation delay. The applicable statutes of limitations afford such protection. "These statutes provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." (*United States* v. *Marion, supra*, 404 U.S. at p. 322 [30 L.Ed.2d at pp. 479-480].) In addition, the due process clause of the Fifth Amendment may require dismissal of an action for preaccusation delay. "Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment, see *United States* v. *Lovasco*, 431 U.S. 783, 788-789 [52 L.Ed.2d 752, 758-759, 97 S.Ct. 2044] (1977), or to a claim under any applicable statutes of limitations, no Sixth Amendment right to a speedy trial arises until charges are pending." (*United States* v. *MacDonald* (1982) 456 U.S. 1, 7 [71 L.Ed.2d 696, 703, 102 S.Ct.

1497].)[4] As the court in *Marion* found, however, the case before it should not have been dismissed simply because there was an extended delay between the crime and the formal indictment. "Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment. Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature." (404 U.S. at pp. 325-326 [30 L.Ed.2d at p. 482].) Under *Marion,* the trial court in the present case could not have dismissed the case against appellant simply because of the 40-month delay between the date of the crime and appellant's arrest. In addition, unlike the court in *Marion,* we have the benefit of reviewing the evidence actually adduced at trial, and therefore are able to conclude that the delayed prosecution did not in fact affect Butler's interest in a fair trial. This is not a case in which the prosecution witnesses were unaware of the identity of the man in the Butlers' yard or carrying the bottle, and thus had to reconstruct his appearance from memory. They knew appellant. The passage of time could have had no effect on their testimony. Appellant's memory was impaired, but the impairment appears to have had nothing to do with the passage of time, but was the result of extended ingestion of alcohol. Moreover, it appears that he had no better recall of the relevant events shortly after they occurred than he had at trial. Finally, although there is no evidence that "Al" could not be located for the trial, or that he could have been located had the action been prosecuted at an earlier date, the evidence—including Butler's own testimony—discloses that there was no likelihood that the presence of this witness would have affected the outcome of the trial. At best this witness would have done no more than to support the claim that Butler did not intend to steal when he entered the residence; a claim apparently accepted by the jury.

Appellant relies on the more recent case of *Doggett* v. *United States* (1992) 505 U.S. 647 [120 L.Ed.2d 520, 112 S.Ct. 2686] (*Doggett*). *Doggett*

---

[4]The present case should be distinguished from that in which a defendant is charged with a misdemeanor. Unlike the situation in felony cases, the prosecution in a misdemeanor action commences at the time the complaint in filed. (Pen. Code, § 804, subds. (a) and (b).) As the time during which prosecution of the matter is pending in a court does not count in determining if the applicable statute of limitations has run (Pen. Code, § 803, subd. (c)), the statutes of limitation do not protect a misdemeanor defendant from postcomplaint delays. The misdemeanor defendant, however, is protected from undue delays because in such cases the complaint acts as the accusation. Thus, in contrast to the felony cases, the filing of the complaint in a misdemeanor action triggers the defendant's Sixth Amendment rights. (*Serna* v. *Superior Court* (1985) 40 Cal.3d 239, 262 [219 Cal.Rptr. 420, 707 P.2d 793].)

concerned the right to a speedy trial guaranteed by the Sixth Amendment and thus, again, is not directly applicable here. The court in *Doggett*, however, recognized that a defendant's ability to present a defense might be prejudiced by an excessive delay in ways the defendant is unable to prove or even to identify. (*Id.* at p. 654 [120 L.Ed.2d at pp. 529-530, 112 S.Ct. at pp. 2692-2693].) The court held, therefore, that where the delay is excessive, dismissal under the Sixth Amendment may be warranted even absent a particularized showing of prejudice. "To be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice. But even so, the Government's egregious persistence in failing to prosecute Doggett is clearly sufficient. The lag between Doggett's indictment and arrest was 8 1/2 years, and he would have faced trial 6 years earlier than he did but for the Government's inexcusable oversights. The portion of the delay attributable to the Government's negligence far exceeds the threshold needed to state a speedy trial claim; indeed, we have called shorter delays 'extraordinary.' See *Barker*, *supra*, [407 U.S.,] at 533 [33 L.Ed.2d 101, 118-119, 92 S.Ct. at 2182]. When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review . . . and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, *e.g.*, 407 U.S. at 534-536 [33 L.Ed.2d 101, 119-120, 92 S.Ct. 2182, 2194-2195], nor persuasively rebutted, the defendant is entitled to relief." (*Doggett*, *supra*, 505 U.S. at pp. 657-658 [120 L.Ed.2d at p. 532, 112 S.Ct. at p. 2694], fns. omitted.)

The court in *Doggett* appears to retreat from the position of earlier cases that although a lengthy delay in bringing a case to trial carries a presumption of prejudice for purposes of triggering a Sixth Amendment *inquiry*, a defendant is not entitled to Sixth Amendment *relief* absent some showing of actual prejudice. It can be argued that the court's finding that a defendant may be granted relief for an excessive delay even absent a showing of actual prejudice should apply equally to preaccusation delay such as occurred here. We need not here decide if the analysis in *Doggett* applies to Fifth Amendment claims, however, because we conclude that *Doggett*'s analysis does not alter the conclusion that no relief was available to appellant under the circumstances of this case. The defendant in *Doggett*, apparently unknown to himself, was indicted on federal drug charges but left the country before he could be arrested. He was imprisoned for some time in Panama and later lived for an unspecified time in Columbia. He then returned to the United States, married, earned a college degree, found steady employment and lived openly under his own name. *Doggett* was arrested eight and one-half years after the indictment was filed against him following a routine credit check on individuals with outstanding warrants. Although it is not clear from the

record, it seems probable that the case against *Doggett* was more complicated than the case against appellant here. It follows that there was a much larger potential in *Doggett* than here that the passage of time would have an adverse effect on the ability to present a defense. In addition, while eight and one-half years passed in *Doggett's* case, only slightly over three years (i.e., forty months) passed here. In *Marion, supra,* where the court specifically concluded that there was no actionable presumption of prejudice from preaccusation delay, a period of 38 months had passed between the date of the crime and the date of the defendant's arrest. In *Barker* v. *Wingo. supra,* involving the Sixth Amendment, four years had passed between the date of the indictment and the date of trial. The court concluded that the defendant had failed to establish prejudice to his ability to òbtain a fair trial. "[T]here is no claim that any of Barker's witnesses died or otherwise became unavailable owing to the delay. The trial transcript indicates only two very minor lapses of memory—one on the part of a prosecution witness—which were in no way significant to the outcome." (407 U.S. at p. 534 [33 L.Ed.2d at p. 119].) As in these cases, the delay at issue here, while undeniably lengthy, was not so excessive as to mandate a presumption of prejudice. In any event, even if such a presumption did exist, it was rebutted by the actual evidence. The delay did not deprive appellant of a fair trial and he therefore was entitled to no relief under the Fifth Amendment as well as none under the Sixth Amendment.

 Finding no relief available to Butler under federal law, we turn to state law. California also recognizes the distinction between pre- and post-accusation delay. Article I, section 15 of California's Constitution guarantees the right to a speedy trial. Unlike the federal constitutional provision, the state-guaranteed right attaches when the criminal complaint is filed. (*People* v. *Hannon* (1977) 19 Cal.3d 588, 608 [138 Cal.Rptr. 885, 564 P.2d 1203].) However, like the federal right, the state preaccusation guarantee is based on principles of due process and the right to a fair trial. "In evaluating a claim of precomplaint delay, 'any prejudice to the defendant resulting from the delay must be weighed against justification for the delay.' [Citation.] 'In the balancing process, the defendant has the *initial* burden of showing some prejudice before the prosecution is required to offer any reason for the delay [citations]. The showing of prejudice requires some evidence and cannot be presumed. [Citations.]' [Citations.] Prejudice may be shown by loss of material witnesses due to lapse of time [citation] or loss of evidence because of fading memory attributable to the delay. [Citation.]" (*People* v. *Morris,* (1988) 46 Cal.3d 1, 37 [249 Cal.Rptr. 119, 756 P.2d 843], disapproved on other grounds in *In re Sassounian* (1995) 9 Cal.4th 535, 543-544, fn. 5 [37 Cal.Rptr.2d 446, 887 P.2d 527].) It follows that the same analysis employed in considering preaccusation delay in light of the Fifth

Amendment of the United States Constitution is employed in considering preaccusation delay in light of article I, section 15 of California's Constitution; the defendant must make some showing of actual prejudice. We already have performed that analysis and have concluded that the trial court could not have granted Butler any relief for the preaccusation delay.

Finally, we consider a recent appellate court case that appears to accept that a defendant need not prove actual prejudice in order to prevail on the claim that his right to a speedy trial was violated by a lengthy preaccusation delay. In *Stabio* v. *Superior Court* (1994) 21 Cal.App.4th 1488 [26 Cal.Rptr.2d 615], although the delay at issue was preaccusation, the court followed the Sixth Amendment analysis developed by the court in *Barker* v. *Wingo*, *supra*, and apparently concluded that a delay of four years and one month between the date the criminal complaint was filed and the defendant was arrested created a presumption of prejudice. We disagree that a Sixth Amendment analysis is appropriate when the claim is preaccusation delay, and we further disagree that the mere fact of a four-year delay in prosecution creates a presumption that a defendant will not be afforded a fair trial. It is enough here, however, that any such presumption was rebutted by the facts of this case.

We find no violation of appellant's right to a speedy trial, and therefore no prejudice to him resulting from counsel's failure to press the motion for dismissal on the grounds of violation of his speedy trial rights.

The judgment is affirmed.

Strankman, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied July 21, 1995, and appellant's petition for review by the Supreme Court was denied October 4, 1995.