Opinion
HAERLE, J.
I. Introduction
Appellants Daniel Adam Wade (Wade) and Paul Christopher Buckley (Buckley) (collectively appellants) were convicted by a jury of various charges stemming from a shoot-out with police officers from the Richmond Police Department when the latter attempted to serve a search warrant at their apartment.
Appellants raise the following trial errors on appeal: (1) the trial court improperly denied their Wheeler/Batson motion;[1] (2) the jury committed prejudicial misconduct; (3) the prosecutor committed misconduct; (4) appellants’ motion to suppress evidence was improperly denied; (5) the trial court erred by excluding evidence as to what a reasonable person would have believed when the officers started battering the apartment door; (6) police testimony about the mental state of marijuana sellers was erroneously admitted; (7) the trial court erred in admitting the search warrant; (8) the trial court failed to properly instruct the jury on the mental element of knowledge; (9) the trial court erred in denying appellants’ requested jury instruction on the reliability of spontaneous statements; (10) the trial court erred by failing to properly instruct on the issue of self-defense; and (11) appellants’ right to have the jury determine all issues was violated by the trial court’s failure to instruct them on knock-and-notice requirements. In addition, Buckley also contends he was improperly convicted of four counts because there was no evidence he intended to assault four different people. We reject each of these contentions and affirm the judgment.
II. Procedural and Factual Background*
*662 III. Discussion
A. Wheeler!Batson Claim
Appellants contend that the prosecutor used peremptory challenges to exclude members of a cognizable group from the jury in violation of their right to trial by a jury drawn from a representative cross-section of the community, guaranteed by article I, section 16, of the California Constitution, and of the prospective juror’s right of equal protection. (Wheeler, supra, 22 Cal.3d 258; Batson, supra, 476 U.S. 79.) We disagree.
As recited in the facts above, this case involved two African-American men who shot and injured two Richmond police officers.[14] When the prosecutor used two of his peremptory challenges to strike two African-American women, Vera Rutherford (Rutherford) and Joann James (James), counsel for both appellants moved for a mistrial under Wheeler on the grounds that the prosecutor had struck the women solely on the basis of their race.[15] The trial court denied both motions finding that no prima facie case had been established.[16] The jury that was ultimately impaneled contained one African-American juror, a fact not mentioned by our dissenting colleague, but a pertinent fact nonetheless. (See, e.g., People v. Dunn (1995) 40 Cal.App.4th 1039, 1053-1054 [47 Cal.Rptr.2d 638].)
*663 It is well established that the use of peremptory challenges to remove prospective jurors solely on the basis of a presumed group bias violates both *664 the state and federal Constitutions. (People v. Turner (1994) 8 Cal.4th 137, 164 [32 Cal.Rptr.2d 762, 878 P.2d 521] (Turner).) “ ‘ “[I]f a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must raise the point in timely fashion and make a prima facie case of such discrimination to the satisfaction of the court. First, ... he should make as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group within the meaning of the representative cross-section rule. Third, from all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association.” ’ ” (Ibid., citing People v. Howard (1992) 1 Cal.4th 1132, 1153-1154 [5 Cal.Rptr.2d 268, 824 P.2d 1315] (Howard), italics in original.) “Once the moving party has established a prima facie case, the burden shifts to the other party to come forward with a race-neutral explanation related to the particular case to be tried. [Citations.]” (People v. Fuentes (1991) 54 Cal.3d 707, 714 [286 Cal.Rptr. 792, 818 P.2d 75].)
In reviewing a Wheeler motion, “. . .we must begin by recognizing there is a presumption a party exercising a peremptory challenge is doing so on constitutionally firm ground.” (People v. Bernard (1994) 27 Cal.App.4th 458, 465 [32 Cal.Rptr.2d 486] (Bernard).) Because a challenge is presumed valid, it is incumbent for the defendant to show a “strong likelihood” that jurors were challenged because of their group association and not for a genuine, nondiscriminatory purpose. (People v. Garceau (1993) 6 Cal.4th 140, 171 [24 Cal.Rptr.2d 664, 862 P.2d 664].)[17] “A defendant may not simply rely upon exclusion of the group-associated prospective jurors in establishing ‘a strong likelihood’ of removal because of group bias. [Citation.] Rather, a defendant should underscore ‘other relevant circumstances, such as prospective jurors’ characteristics, the nature of the prosecutor’s voir dire, or the prospective jurors’ answers to questions. . . .’ [Citation.]” (Bernard, supra, 27 Cal.App.4th at p. 466.)
Ruling on Wheeler motions “ ‘ “requires trial judges to make difficult and often close judgments. They are in a good position to make such determinations, however, on the basis of their knowledge of local conditions and of *665 local prosecutors.” [Citation.] They are also well situated to bring to bear on this question their powers of observation, their understanding of trial techniques, and their broad judicial experience. We are confident of their ability to distinguish a true case of group discrimination by peremptory challenges from a spurious claim . . . .’” (People v. Sanders (1990) 51 Cal.3d 471, 501 [273 Cal.Rptr. 537, 797 P.2d 561] (Sanders), citing Wheeler, supra, 22 Cal.3d at p. 281, quoting Kuhn, Jury Discrimination: The Next Phase (1968) 41 So.Cal.L.Rev. 235, 295, fn. 5.) When reviewing the denial of a Wheeler motion where the trial court has not found a prima facie case of group bias, we consider the entire voir dire record. (Howard, supra, 1 Cal. 4th at p. 1155.) We examine the record, as with other findings of fact, for evidence to support the trial court’s ruling. (Ibid.) “If the record ‘suggests grounds upon which the prosecutor might reasonably have challenged’ the jurors in question, we affirm.” (Ibid., citing People v. Bittaker (1989) 48 Cal.3d 1046, 1092 [259 Cal.Rptr. 630, 774 P.2d 659].)
We conclude that the trial court acted within its discretion in determining that defense counsel had failed to make a showing of prima facie discrimination.[18] In particular, defense counsel failed to establish from all the circumstances of the case a strong likelihood that such persons were being challenged because of their group association. (Turner, supra, 8 Cal.4th at p. 167; People v. Howard, supra, 1 Cal.4th at p. 1154.) Rather, the only bases for establishing a prima facie case cited by defense counsel were that (1) the defendants were African-American, (2) both of the women were African-American and (3) nothing in their questionnaires or responses to oral questions would indicate a particular reason why they would not be suitable jurors. That was the sum total of the defense presentation. But this quantum of showing has consistently been held to be insufficient in demonstrating a strong likelihood that the prospective jurors were being challenged on the basis of their group association. (Turner, supra, 8 Cal.4th at p. 167 *666 [defense counsel’s statement that all of the challenged prospective jurors were Black and either indicated that they could be fair and impartial or in fact favored the prosecution was insufficient]; Howard, supra, 1 Cal.4th at p. 1154 [defendant’s statement that two Blacks were excluded because they were Black and for no other reason was found insufficient]; People v. Rousseau (1982) 129 Cal.App.3d 526, 536-537 [179 Cal.Rptr. 892] [defense counsel’s statement that “ ‘there were only two [B]lacks on the whole panel, and they were both challenged by the district attorney’ ” failed to establish a prima facie case]; Bernard, supra, 27 Cal.App.4th at p. 468 [no strong likelihood found where defense counsel simply summarized the background of two challenged African-American jurors and stated that they would make good jurors].) Moreover, the prosecutor accepted a jury which included an African-American.[19] “While the fact that the jury included members of a group allegedly discriminated against is not conclusive, it is an indication of good faith in exercising peremptories . . . .” (Turner, supra, 8 Cal.4th at p.168.)
The prosecutor used his third peremptory challenge to excuse Rutherford.[20] Rutherford was a 51-year-old legal technician. She had a business degree from San Francisco City College. She had always worked in legal departments and was presently employed by the Department of Labor. Her duties included keeping an administrative law judge’s calendar and getting him prepared for hearings. She had received on-the-job training but hadn’t had any formal legal training. She had no experience with criminal law. She had lived in San Pablo for 15 years and was concerned about burglaries and shootings in her neighborhood. She had a friend who was once arrested for driving under the influence (DUI) by the Martinez Police Department. She was a passenger in the car at the time and testified as a witness at a hearing. The charges were dropped. Rutherford stated that she believed her friend was treated fairly by the police and the district attorney’s office, although she listed the experience as “not bad” in her juror questionnaire.
The prosecutor used a later peremptory challenge to excuse prospective juror James. She testified that she recognized one of the appellants, having seen him in Richmond before. She stated that she believed that search warrants “do a quite a bit of damage, which is unnecessary.” She also testified that she often went by the location of the crime when she took the bus, but that she was not taking that route to get to court. James also testified *667 that her brother had been arrested for burglary in Berkeley and was presently in jail. She did not know if he had been treated fairly by the police. She also stated that her brother had also taken illegal drugs in the past. In addition, James testified that she had owned a firearm and had shot it at a range, but that it had been stolen.
Inasmuch as the trial court explicitly ruled that no prima facie case of group bias had been made, the law is absolutely clear, our dissenting colleague notwithstanding, that the prosecution was not required to offer any justification for its challenges. (Howard, supra, 1 Cal.4th at p. 1157 [“the court ha[s] no occasion to ask for explanations unless and until it found a prima facie case of group bias”]; see also Bernard, supra, 27 Cal.App.4th 458, 469; People v. Fuentes, supra, 54 Cal.3d at pp. 716-717, fn. 5.) Contrary to the implication of the dissent (dis. opn., post, at p. 677), there is no case which stands for the proposition that, at this juncture, the prosecution was required to say anything.
We must uphold the ruling as long as there might have been a justifiable rationale for the challenges. Hence, we look to see whether there are race-neutral reasons why a prosecutor might have challenged Rutherford and James. We do so to determine whether or not the appellants met their burden of showing a “strong likelihood” that such jurors were struck because of their group association. It is clearly uncomfortable for an appellate court to postulate hypothetical reasons a prosecutor might have challenged each juror. We note, however, that we would not be forced to comb the record for evidence of racial bias and/or hypothecate why jurors were excluded if appellants had articulated with some specificity the bases for the Wheeler challenge. Nonetheless, we are satisfied that there are specific race-neutral reasons to challenge both Rutherford and James.[21]
Rutherford had a history of working in various legal departments and had received on the job legal training. She worked with and knew lawyers, *668 judges and court personnel. Her professional training “ ‘suggested] grounds upon which the prosecutor might reasonably have challenged’ ” her. (Howard, supra, 1 Cal.4th at p. 1156, citing People v. Bittaker, supra, 48 Cal.3d at p. 1092.) In addition, Rutherford had experience with the criminal justice system based on her involvement with her friend’s DUI case. Although she stated verbally that she felt her friend was treated fairly, she initially characterized it with the more puzzling “not bad” phrase in her juror questionnaire. In any event, the prosecutor may have felt that her experience with the criminal justice system was reason enough for exclusion. (People v. Barber (1988) 200 Cal.App.3d 378, 394-395 [245 Cal.Rptr. 895].)
In addition, there were a number of race-neutral reasons why the prosecutor might challenge James. She had seen Wade in Richmond and was familiar with the neighborhood where the shootings occurred. (See People v. Cummings (1993) 4 Cal.4th 1233, 1282 [18 Cal.Rptr.2d 796, 850 P.2d 1].) James’s brother was incarcerated for burglary. (People v. Garceau, supra, 6 Cal.4th at p. 172.) Finally, she expressed anti-law-enforcement sentiment when she stated her feelings about search warrants. (Turner, supra, 8 Cal.4th at p. 170.)[22]
Based on our independent examination of the record, which did not reveal anything that demonstrated that the prosecutor’s challenges were motivated by group rather than specific bias,[23] we agree with the trial court that the defense counsel failed to establish a “strong likelihood” that Rutherford and James were challenged because of their group association.
In addition, we note that this case is factually similar to Bernard, supra, 27 Cal.App.4th at page 468.[24] In Bernard, the defense counsel made Wheeler motions after two African-American potential jurors had been struck. The *669 defense counsel pointed out that his client was African-American and was being charged with a crime against a White victim. As in this case, the defense counsel then described the characteristics of the potential jurors that were excluded and argued that they would make good jurors. The trial court did not request the prosecutor’s reasons for excluding the two jurors because it found that the defense counsel’s showing had failed to demonstrate that that there was a strong likelihood the jurors were being struck based on their group association. The appellate court agreed; in addition, it noted that, as in this case, the prosecution excused only two of five African-Americans on the panel and the jury that was ultimately impaneled contained an African-American.[25] (Id. at pp. 466-468.)
Based on the above, we find that appellants’ constitutional rights were not violated by the prosecutor’s use of peremptory challenges [26]
B.-L.*
IV. Disposition
The judgments are affirmed as to both appellants.
Lambden, J., concurred.

People v. Wheeler (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748] (Wheeler), Batson v. Kentucky (1986) 476 U.S. 79 [106 S.Ct. 1712, 90 L.Ed.2d 69] (Batson).

See footnote, ante, page 658.

There is no record of the police officers’ race.

There were apparently five African-American prospective jurors in the jury pool. One was excused because she no longer lived in Contra Costa County; one was excused by the trial court for cause; two were challenged by the People; and one sat on the jury.

The first Wheeler motion after Rutherford was challenged went as follows:
“Mr. Cook: Yes. And the motion is that the Court declare a mistrial and strike this panel on the ground that my client’s right to a fair and impartial jury has been compromised by the exercise of the People’s last peremptory challenge. And that challenge was of juror no. 9, Vera Rutherford. [SO On her question their [sic] she described her race, or ethnic background, as black. My client, Mr. Buckley, is an African-American. He has a right not to have . . . jurors excluded solely on the basis of race. I cannot glean anything from the questionnaire that Ms. Rutherford filled out, nor from the answers she gave to the other questions that were asked by the Court, which would indicate some particular factor or reason why she would not be a suitable juror. [<1 And the record should also reflect that Ms. Rutherford is—or was presently the only African-American seated in the jury box. There was another African-American man who was dismissed for cause earlier, but now—now the jury is devoid of any one of, who appears to be anyway, of African-American descent. [SO I think the law in this area is outlined fairly clearly in the United States Supreme Court opinion of Batson v. Kentucky.”
“The Court: Ms. Fullerton, are you joining in this motion? “Ms. Fullerton: I am joining in that motion and just a few comments for the record. [SO Mr. Wade is also African-American. I have reviewed the jury questionnaires. In the 64 that were called there were only four that indicated they were African-American. One was excused for cause and one was excused because she no longer lived in Contra Costa County, which left in the entire panel only two African-Americans, one of which was just excluded. [SO And I would join in Mr. Cook’s description of her questionnaire and question by the Court as *663 indicating that there does not appear to be any reason, other than her race, for which she would not be a qualified juror on this case.
“The Court: All right. Just add to the record here and to—clarify or reiterate, it does indicate, or appear in the questionnaires at least, there were a total of four jurors who at least indicated they were African-American in the questionnaires. . . . [SQ The Court has considered whether or not this exercise of one peremptory challenge against a black juror by the People constitutes a prima facie showing that the exercise of the peremptory challenge was solely on the ground of group bias, and under all of the circumstances in this case, the Court cannot find that. [^Q The Court will indicate that this was the third peremptory challenge by the People. We are relatively early on, obviously, in the peremptory challenges by both sides. And, again, under all these circumstances as detailed by both defense counsel and the Court, the Court does not find that the exercise of one peremptory challenge against one black juror under these circumstances makes a prima facie showing that it’s based solely on group bias. And the motion will be denied.
“Mr. Cook: Judge—
“The Court: Yes.
“Mr. Cook: Just further, can I, since you have stated the basis for your ruling, could I point out the opinions of Batson v. Kentucky wherein Justice Powell specifically stated that it would be inconsistent with the promise of equal protection to all to require that the challenging party or the party raising the motion, which I am now, show more than one peremptory challenge or more than one exclusion. That—that’s one of the focal points of the Batson opinion, is that a prima facie showing can be made on the basis of a sole peremptory challenge. “The Court: I’m not disagreeing. It can be. I’m saying under all the circumstances in this case, this Court finds that you have not met your burden of showing that, making a prima facie case, that in this instance under these circumstances that exercise of one peremptory challenge against one black juror constitutes that showing.”
The second Wheeler motion was handled as follows:
“Mr. Cook: I’m asking you to, on behalf of Mr. Buckley, to strike this jury panel at this time. . . . [<1 There is nothing in Ms. James written questionnaire that would indicate that she could not be fair in the case. There were [szc] nothing—she did not answer that she suspected that she might have a problem being fair in the case. She did give answers to a couple of things; that she had seen Mr. Wade before, that she thought that in some cases search warrants could be abused. Those raise questions, but the Court followed up in each case with a series of questions, just like the Court has done in every case where there—an apparent issue has arisen. And there were nothing in her answers that were—that would indicate to a reasonable person that this person could not be fair and impartial. . . .”
“The Court: Now, the law requires that you make a prima facie showing that these challenges were based solely on discrimination at this point in time. Certainly I have to make a part of the record, it’s part of my duty how many blacks were in the venire as a total, and that’s what I attempted to do and did for the record. [1 As far as whether you met that burden at this time, it is in fact true that another peremptory challenge was entered by the People of another Black juror. I would indicate for the record that there are things in the questionnaire, as well as in her answers in which do cause concern, and certainly good cause concern for any reasonable attorney—and the prosecution’s viewpoint, she has a brother which was prosecuted for burglary. She indicated in oral voir dire that she had feelings about search warrants and whether or not they were necessary or abused in some circumstances. She indicated as well she has a brother who used drugs, and she’s indicated in answers dealing with racial issues that she does have what I would, at least from the answers, here characterize as strong feelings. [H Yes, it is correct that in asking her follow-up questions she had not responded in *664 any way that would have caused me to grant a challenge for cause. And I certainly don’t disbelieve her answers to those follow-up questions any more than I would disbelieve the answers to the juror that you wanted me to believe was perjuring herself so that she could be challenged for cause. At this time I’m not going to find that prima facie case has been made out and, again, the motion will be denied.”

The “strong likelihood” phrase has been repeated often by our Supreme Court. In addition to Howard and Turner, see also People v. Davenport (1995) 11 Cal.4th 1171, 1199-1200 [47 Cal.Rptr.2d 800, 906 P.2d 1068]. Although the phrase conveys the clear message that the test is not an easy one (a message we take to heart in the present case), we nonetheless share with our dissenting colleague some concern that the phrase has not exactly been well defined by our Supreme Court, either in the cited cases or elsewhere.

Contrary to the suggestion of our dissenting colleague (dis. opn., post, at pp. 678-679 ), Judge Sepulveda clearly understood that, at least theoretically, one challenge could be enough to establish racial bias. Her ruling was not to the contrary, but was only to the effect that here the defense had not met its burden of showing that the Rutherford strike demonstrated a prima facie case of such. The cases make very clear that “considerable deference” must be paid to the trial court’s determination. (See Howard, supra, 1 Cal.4th at p. 1155; Sanders, supra, 51 Cal.3d at p. 500.) In explaining why this is so, the Sanders court noted that a Wheeler motion “ ‘ “requires trial judges to make difficult and often close judgments. They are in a good position to make such determinations, however, on the basis of their knowledge of local conditions and of local prosecutors.” [Citation.] They are also well situated to bring to bear on this question their powers of observation, their understanding of trial techniques, and their broad judicial experience. We are confident of their ability to distinguish a true case of group discrimination by peremptory challenges from a spurious claim . . . .’ [Citations.] Applying this standard of giving considerable deference to the determination of the trial court, ‘we see no good reason to second-guess [the trial court’s] factual determination’ [citation] that the prosecutor was not motivated by bias . . . .” (Sanders, supra, 51 Cal.3d at p. 501.)

There is no record of the ethnic or racial background of the other impaneled jurors.

It is worth emphasizing that the Rutherford challenge happened quite early in the trial, well before either James was challenged or much else of what Justice Kline speaks of in part I of his dissent occurred. Bearing in mind the slender nature of the defense allegations, we believe it is manifestly incorrect to argue, as the dissent does, that, at that early stage, the trial court was required to find a prima facie case.

Our dissenting colleague’s argument (dis. opn., post, at pp. 671-674) that Rutherford could not reasonably be differentiated from other jurors flies in the face of explicit Supreme Court directive. In Howard the court said that in such a situation—i.e., where the trial court has ruled that a prima facie case has not been established and thus the prosecutor has given no reasons for the challenge—we review the record for “ ‘grounds upon which the prosecutor might reasonably have challenged’ the jurors in question.” (Howard, supra, 1 Cal.4th at p. 1155.) And in Turner that court made it clear that exactly the type of comparative analysis Justice Kline undertakes in this section of his dissent is distinctly unhelpful. (Turner, supra, 8 Cal.4th at pp. 169-170; see also People v. Arias (1996) 13 Cal.4th 92, 136, fn. 16 [51 Cal.Rptr.2d 770,913 P.2d 980].) Even if permissible, the dissent’s analysis will not withstand scrutiny. Thus, Justice Kline suggests that there may have been something sinister about the prosecutor waiting through the voir dire of 11 other jurors before striking Rutherford. (Dis. opn., post, at p. 675.) He ignores the fact that the prosecution did this at other times, too.

Appellants argue that these reasons are insufficient because the prosecutor did not excuse other non-African-American jurors whose backgrounds were similar. However, the Supreme Court has rejected placing an undue emphasis on comparisons of the jurors’ responses and has noted that “ ‘the same factors used in evaluating a juror may be given different weight depending on the number of peremptory challenges the lawyer has at the time of the exercise of the particular challenge.’ ” (Turner, supra, 8 Cal.4th at p. 169, citing People v. Johnson (1989) 47 Cal.3d 1194, 1220 [255 Cal.Rptr. 569, 767 P.2d 1047].)

Justice Kline suggests (dis. opn., post, at p. 675) that (a) the trial court’s questioning of Rutherford was “innocuous” and (b) the fact that the prosecution did not propound further questions of her suggests actual bias on its part. He is, we respectfully submit, wrong on both counts. Some jurors were, in fact, questioned more extensively by the court, others less. In any event, we do not understand how the prosecution’s motivation can be deduced from what the trial court did or didn’t do by way of voir dire. Finally, no counsel was permitted to ask “follow up” questions without “good cause.”

Justice Kline is incorrect in suggesting that, aside from Howard, there is no appellate case rejecting a Wheeler challenge where the party opposing the motion made no effort, or was given no opportunity, to explain why a prima facie case had not been made or where the trial *669 court identified no race-neutral justification for the challenge. Bernard, is, with respect to the second challenge in that case, another.

The Bernard jury ultimately ended up with two African-Americans on its panel; in this case, as already noted, the jury as ultimately impaneled contained one African-American juror.

On appeal, appellants cite confusing statistics regarding the racial background of the jury panel and argue that because statistically a disproportionate number of African-American prospective jurors were challenged that this alone made out a prima facie case of discrimination. Appellants are wrong. It is well established that a prima facie case cannot be shown solely on the basis that the prosecutor used preemptory challenges against a disproportionate amount of members of a minority group. (People v. Howard, supra, 1 Cal.4th at p. 1154; People v. Wimberly (1992) 5 Cal.App.4th 773,782-783 [7 Cal.Rptr.2d 152].) Rather, as stated above, the trial court makes this determination based on “ ‘all of the circumstances of the case.’ ” (People v. Howard, supra, 1 Cal.4th at p. 1154.)

See footnote, ante, page 658.