[No. E018940. Fourth Dist.. Div. Two. May 22, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES EDWARD WALKER, Defendant and Appellant.

[No. E019158. Fourth Dist., Div. Two. May 22, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
JENNIFER ERWIN, Defendant and Appellant.

[No. E019366. Fourth Dist., Div. Two. May 22, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
CLARENCE D. CLEMONS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 1, 2, 4, 5, 6.a., 6.b., 6.c., 6.d., 7.a., 7.b., 8.a., 8.b., 8.c., 8.d., 8.e., 8.f., 9.a. and 9.b.

## COUNSEL

Michael Linfield, Michael Sideman and Linn Davis, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Esteban Hernandez and Barry J. T. Carlton, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RAMIREZ, P. J.**—A jury convicted Clarence D. Clemons, Jennifer Erwin and Charles Edward Walker of perjury (Pen. Code, § 118) and the former two of being accessories after the fact to homicide (Pen. Code, § 32). In bifurcated proceedings, the trial court found that Clemons had suffered a prior conviction, for which he served a prison sentence (Pen. Code, § 667.5, subd. (b)) and Walker had suffered a strike prior (Pen. Code, § 667, subds. (c), (e)). Clemons and Walker were sentenced to prison for four years and six years respectively and Erwin received probation. All three appeal, making various claims, all of which we reject. We therefore affirm the judgments of all three, except that we direct the trial court to correct an error in Clemons's abstract of judgment.

### FACTS

On March 13, 1993, Stacy Murrell attended a party. She left the party during the early morning hours of March 14 with Erwin, Clemons and

Walter Evans, Jr., in Clemons's Cadillac. They drove to a convenience store parking lot where a Jeep containing the victims and their companion was parked. After predicting that he could knock out one of the occupants of the Jeep with one punch, Clemons approached the vehicle and began fighting with the first victim who had gotten out of the vehicle. The first victim appeared to be getting the better of Clemons and Walter Evans, Jr., got out of the Cadillac, approached the combatants and fired a number of shots, killing the first victim and the second, who was sitting in the back seat of the Jeep.

After law enforcement officers received contradictory statements and information from various sources during their investigation of the murders, the grand jury subpoenaed, inter alia, Clemons, Erwin and Walker to testify before it. Clemons falsely testified before the grand jury that he was not at the convenience store at the time of the murders and he arrived at his ex-wife's home in Cabazon during the early morning dark hours of March 14, 1993. Erwin falsely testified before the grand jury that she was not at the convenience store at the time of the murders and she never left the party until she left to go home. Walker falsely testified before the grand jury that the lead detective in the case had him read a false statement about the murders, implicating Walter Evans, Jr., and he did not know and had never seen Clemons before in his life.

## ISSUES AND DISCUSSION

1., 2.*

. . . . . . . . . . . . . . . . . . . . . . . .

### 3. *Wheeler*[6] *Motion*

During voir dire, after the defense had accepted the jury as constituted, the prosecutor exercised a peremptory challenge to remove one of the two Black jurors on the panel. Walker's attorney moved, with Erwin's joining, for a mistrial under *People v. Wheeler*, as follows: "[The excused Black potential juror] is . . . one of two black people on this entire jury panel that I can see.[7] . . . [T]he three defendants are all . . . black. [The prosecutor] gives a long speech about you have your life experiences and all that sort of stuff, then he throws off the very person that would be beneficial to the defendants

---

*See footnote, *ante*, page 1062.

[6]*People v. Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748].

[7]One Black potential juror was excused for cause, another was peremptorily excused, and another served on the jury.

as to life experiences." The prosecutor commented that the defense had failed to show a "systematic . . . [or] . . . repetitive" exclusion of Blacks. After the trial court invited further comment from defense counsel, Walker's attorney stated, "Inasmuch as there are only two blacks on this entire panel—we've gone through 100 people—I would think that the exclusion of one at this point does become a systematic election by [the prosecutor]." The trial court denied the motion, commenting, ". . . [T]he defense has not met their [*sic*] burden with regard to the intent of <u>Wheeler</u>. [¶] . . . [¶] . . . [T]he mere fact that there were only two [B]lacks [in the pool of potential jurors examined] does not create a basis for prohibiting any party, be it the defense or the prosecution, from excluding a particular juror. [¶] . . . [A]lthough the Court appreciates the argument of [Walker's attorney] that [the juror excused by the prosecutor's peremptory removes] . . . , in effect, 50 percent of the [B]lack pool that is available . . . , the Court is not going to find that as being a valid legal basis for implementing <u>Wheeler</u> at this particular point in time.[8] [¶] Obviously, if the situation continues—and depending on the arguments of counsel—the Court may reconsider the situation if it digresses any further than where we happen to be at this particular point."

Clemons's attorney interjected that it was tokenism if the prosecutor felt that by leaving one Black on the jury, he did not have to explain his reasons for using the peremptory against the excused juror. Later, Clemons's attorney said, ". . . I think that there is a prima facie case of systematic exclusion. I think that just because of the mere fact that [the remaining Black potential juror] remains on the panel as an African-American does not rebut the fact that he has peremptory challenges left and he has excluded an African-American juror who, it would appear, would not . . . meet any criteria for prosecution exclusion other than the color of . . . her skin vis-à-vis the color of the skin of our clients. [¶] The fact that he withdrew an objection to somebody else really shouldn't have any bearing. It seems to me it's kind of a tokenism argument that as long as one black face remains on the jury panel, he's allowed to exclude other African-Americans without giving any substantial reasons for it. [¶] I think in this case, and in general, the African-Americans are under-represented in our venires. . . . [¶] . . . And I think that . . . when the first black juror who looks like she may remain after all counsel for the defense have passed is excluded, it clearly, in this context, makes out a case of systematic exclusion because of race. [¶] And I think that [the prosecutor] should be made to put on the record his reasons, if any, for exercising that peremptory challenge." Walker's attorney joined in these comments, adding, "[O]ne [Black] juror on a panel of 60 . . . [is] something less than .01 percent of black jurors." The trial court responded that its previous ruling stood.

---

[8]We reject the contention of Walker and Erwin that the trial court accepted the prosecutor's incorrect assertion that a systematic exclusion, i.e., more than one, had to be shown.

The foregoing contains *all* of the statements made by defense counsel in support of their *Wheeler* motion.

■ "[T]he use of peremptory challenges to remove prospective jurors solely on the basis of a presumed group bias based on membership in a racial group violates both the state and federal Constitutions. . . . Under *Wheeler* and *Batson* [v. *Kentucky* (1986) 476 U.S. 79, 89 [106 S.Ct. 1712, 1719, 90 L.Ed.2d 69]], ' "[i]f a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must raise the point in timely fashion and make a prima facie case of such discrimination to the satisfaction of the court. . . . [F]rom all the circumstances of the case he must show a *strong likelihood* that such persons are being challenged because of their group association." ' [Citations.] [¶] . . . [¶] There is a presumption that a prosecutor uses his or her peremptory challenges in a constitutional manner." (*People* v. *Turner* (1994) 8 Cal.4th 137, 164-165 [32 Cal.Rptr.2d 762, 878 P.2d 521], italics in original.) "Only [if the defendant shows a strong likelihood that jurors were challenged because of their group association] does the burden shift to the prosecution 'to explain adequately the racial exclusion.' [Citations.]" (*People* v. *Williams* (1997) 16 Cal.4th 635, 664 [66 Cal.Rptr.2d 573, 941 P.2d 752].) "Because *Wheeler* motions call upon trial judges' personal observations, we view their rulings with 'considerable deference' on appeal." (*People* v. *Howard* (1992) 1 Cal.4th 1132, 1155 [5 Cal.Rptr.2d 268, 824 P.2d 1315].) "[T]he trial judge, who had observed the voir dire, [is] in the best position to determine under 'all the relevant circumstances' of the case whether there was a ' "strong likelihood" ' these prospective jurors were being challenged 'because of their group association.' " (*People* v. *Davenport* (1995) 11 Cal.4th 1171, 1201 [47 Cal.Rptr.2d 800, 906 P.2d 1068].) These circumstances are often subtle, visual, and therefore incapable of being transcribed, subjective, and even trivial. (*People* v. *Jackson* (1996) 13 Cal.4th 1164, 1197 [56 Cal.Rptr.2d 49, 920 P.2d 1254]; *People* v. *Montiel* (1993) 5 Cal.4th 877, 910, fn. 9 [21 Cal.Rptr.2d 705, 855 P.2d 1277]; *People* v. *Johnson* (1989) 47 Cal.3d 1194, 1215-1216 [255 Cal.Rptr. 569, 767 P.2d 1047].)

■ Walker and Erwin here contend that the trial court erred in concluding that they had not made a prima facie showing. They contend that the prosecutor asked the excused juror mostly perfunctory questions.[9] We disagree. However, we will assume, for purposes of this argument, that the defendants are correct. In support of their contention that this is sufficient to demonstrate that the trial court erred, they cite *People* v. *Wheeler, supra,* 22 Cal.3d at pages 280-281. However, there, *Wheeler* states, "We shall not attempt a compendium of all the ways in which a party may seek to make

---

[9]This contention was not made below.

. . . a [prima facie] showing. For illustration, however, we mention certain types of evidence that will be relevant for this purpose. Thus the party may show that his opponent has struck most or all of the members of the identified group from the venire, or has used a disproportionate number of his peremptories against the group. He may also demonstrate that the jurors in question share only this one characteristic—their membership in the group—and that in all other respects they are as heterogeneous as the community as a whole. [Fn. omitted.] Next, *the showing may be supplemented* when appropriate by such circumstances as the failure of his opponent to engage these same jurors in more than desultory voir dire . . . ." (Italics added.) Thus, the fact that a prosecutor engaged in perfunctory questioning of the excused jurors *may, when combined with the fact that the prosecutor struck all or most of the members of a group from the venire or used a disproportionate number of peremptories against that group,* be used to make a prima facie showing. It is important to note what this language in *Wheeler* does not say—it does not say that perfunctory questioning, absent excusal of all or most members of a group or use of a disproportionate number of peremptories against a group, may establish a prima facie showing. The excusal here of one of the two Blacks on the jury venire did not constitute excusal of all or most of the members of a group. Walker and Erwin did not, and, obviously, could not, allege that the prosecutor had used a disproportionate number of peremptories against Blacks. The language in *Wheeler* also does not say that even if the prosecutor excused all or most members of a group or used a disproportionate number of peremptories against a group, and used only perfunctory questions on the excused jurors, that a prima facie case *has been established*—only that it *may*.

■ As to the contention of Walker and Erwin that a prima facie showing was made, they are in error. In *People v. Howard, supra,* 1 Cal.4th 1132, the California Supreme Court held, ". . . [D]efendant's . . . entire motion consisted of these three sentences: '[T]here [have] been two Black people that advanced to the point where they were on the panel at one time. Both of them were excluded by the District Attorney, and it is my position they were excluded because they are black and for no other reason. I would like to make a motion under *Wheeler* on that basis.' [¶] Thus defendant relied solely on the fact that the prosecutor had challenged the only two Black prospective jurors. Defendant did not make any effort to set out the other relevant circumstances, such as the prospective jurors' individual characteristics, the nature of the prosecutor's voir dire, or the prospective jurors' answers to questions. A showing as limited as defendant's offers little practical assistance to the trial court, which must determine from 'all the circumstances of the case' whether there is 'a strong likelihood' that prospective jurors have been challenged because of their group association rather than because of

any specific bias. [Citation.]" (1 Cal.4th at p. 1154.) The court concluded that the defendant's attempt to make a prima facie case was inadequate. (Accord, *People v. Mayfield* (1997) 14 Cal.4th 668 [60 Cal.Rptr.2d 1, 928 P.2d 485] [Three of five jurors excused by the prosecutor were African-American. No prima facie case.]; *People v. Davenport, supra,* 11 Cal.4th 1171 [Three of six jurors excused by the prosecutor were Hispanic. No prima facie case.]; *People v. Turner, supra,* 8 Cal.4th 137 [Defendant was Black, victims White. Four of six jurors excused by the prosecutor were Black. No prima facie case.]; *People v. Buckley* (1997) 53 Cal.App.4th 658, 667 [61 Cal.Rptr.2d 860]; *People v. Allen* (1989) 212 Cal.App.3d 306 [260 Cal.Rptr. 463] [Six of fourteen jurors excused by the prosecutor were Black. No prima facie case.]; *People v. Rousseau* (1982) 129 Cal.App.3d 526 [179 Cal.Rptr. 892] [There were two Blacks on the jury panel. The prosecutor excused both. No prima facie case.].) The showing made here by the defendants as to relevant circumstances, which tended to show a racial motive, was nonexistent. Clearly, the trial court neither erred in finding no prima facie case had been made or in failing to require the prosecutor to state his reasons for exercising the peremptory challenge, the latter going hand in hand with the former. (*People v. Buckley, supra,* 53 Cal.App.4th at p. 667.)

This leads us to a point made by the People with which we and other appellate courts, some indirectly,[10] agree. In a case, such as this, where a defendant fails to make a prima facie case and, because of that, the prosecutor has not been called upon to state race-neutral reasons for exercising a peremptory, the appellate court, under the position taken by the California Supreme Court in *Howard,* is placed in the almost untenable position of culling from the record possible race-neutral reasons for excusal. (See *People v. Trevino* (1997) 55 Cal.App.4th 396, 409-410 [64 Cal.Rptr.2d 61].) Of course, it is interesting to note that the Supreme Court ignored the *Howard* approach, without explanation, in *People v. Alvarez* (1996) 14 Cal.4th 155, 198-199 [58 Cal.Rptr.2d 385, 926 P.2d 365], and held that substantial evidence supported the trial court's finding that no prima facie case had been made because the defendant merely asserted that the excused potential juror was Black. Be that as it may, we embark upon our *Howard* duty to cull from this transcript a possible race-neutral reason for excusing this juror.

First, it is notable that a Black did serve on the jury. "While the fact that the jury included members of a group alleged discriminated against is not conclusive, it is an indication of good faith in exercising peremptories . . . ." (*People v. Turner, supra,* 8 Cal.4th 137, 168.) Moreover, as the

---

[10]See *People v. Buckley, supra,* 53 Cal.App.4th 658.

People correctly point out, the potential juror at issue here exhibited a reluctance to serve, claiming that she could not afford to because her employer would not pay her, then later admitting she did not know this for a fact and finally discovering that this was not the case. Her response to the question whether she could keep an open mind until called upon to render a decision was less than unequivocal. Thus, there was race-neutral justification for the excusal.[11]

4.-9.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

In sentencing Clemons on the accessory conviction, the trial court imposed "one-third the mid term, or eight months, to run concurrent . . . to the time for Count I, technically stayed pursuant to 654 of the Penal Code." Clemons's abstract of judgment indicates he received a "consecutive 1/3 violent" term, which was stayed under Penal Code section 654. Having never seen a concurrent term imposed, which was then "technically" stayed under Penal Code section 654 (and neither party raising the issue), we do not advise the trial court on the propriety of this; however, we direct the trial court to have its clerk amend the abstract to reflect the fact that the term imposed and stayed was *concurrent*, rather than "1/3 consecutive violent." In all other respects, the judgments are affirmed.

Richli J., and Ward J., concurred.

The petition of appellant Charles Edward Walker for review by the Supreme Court was denied August 26, 1998.

---

[11]Finally, we feel compelled to comment on an assertion made by Walker during oral argument. He contended that if race-neutral reasons for excusing a juror could not be culled from the record, *Howard* compels us to reverse the judgment. *Howard* made no such declaration, nor has any of the cases cited by any of the parties on this subject. Rather, we believe that since, in such cases, it is the *defendant's* initial failure to make a prima facie case that causes the absence from the record of a statement of reasons, the defendant, and not the People, should suffer the consequences of such failure.

*See footnote, *ante*, page 1062.