98 Cal.Rptr.2d 127 (2000)
82 Cal.App.4th 339
The PEOPLE, Plaintiff and Respondent,
v.
Jorge L. MARTINEZ et al., Defendants and Appellants.
No. B137144.
Court of Appeal, Second District, Division Six.
July 18, 2000.
Review Granted October 25, 2000.
*130 Kevin C. McLean, San Diego, under appointment by the Court of Appeal, for Defendant and Appellant, Jorge L. Martinez.
Joseph B. de Illy, Sacramento, under appointment by the Court of Appeal, for Defendant and Appellant, Ramon Quintero.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Senior Assistant Attorney General, John R. Gorey, Supervising Deputy Attorney General, Michelle M. Paffile, Deputy Attorney General, for Plaintiff and Respondent.
COFFEE, J.
Appellants Jorge L. Martinez and Ramon Quintero robbed a landscaper while he was working in the front yard of a client's home. A jury convicted them of second degree robbery with firearm enhancement allegations. (Pen.Code, §§ 211, 212.5, subd. (c); 12022, subd. (b); 12022.53, subd. (b).)
Martinez claims on appeal that the trial court erred by applying an erroneous legal standard when ruling on his motion to dismiss the jury venire under People v. Wheeler (1978) 22 Cal.3d 258, 148 Cal. Rptr. 890, 583 P.2d 748 (Wheeler). Quintero argues that his trial counsel was ineffective for failing to join in the Wheeler motion brought by Martinez. Martinez also contends the evidence was insufficient to support the jury's finding that he personally used a firearm, and Quintero claims he was denied his right to conflict-free counsel. We affirm.

FACTS
On April 9, 1999, Bellasario Sosa was working as a landscaper at a Granada Hills home. At about 1:00 p.m., three Hispanic men in a blue Lincoln Continental stopped at the house. The man in the front passenger seat got out and pointed a handgun at Sosa, telling him to put his hands up. A second man got out of the back seat and took Sosa's wallet. Both men returned to the car and they drove away.
Sosa's boss came to the front of the house and Sosa told him what had happened. The police were called and within the hour, officers had stopped a blue Continental matching the description of the vehicle used in the robbery. Quintero was driving, Martinez was in the front passenger seat, and Arturo Cortez was in the back seat.[1] Police found a loaded .22-caliber handgun under the front passenger seat and discovered Sosa's wallet in the glove compartment.
Police transported Sosa to the site of the traffic stop for a curbside identification. He identified Martinez as the man who had pointed the gun at him, but had not seen the driver's face and could not identify Quintero. He had been told ahead of time that the men might or might not be the robbers.
Quintero testified at trial and denied participating in the robbery. He claimed he was a day laborer who had been picked up in front of Home Depot that morning to work on a job in Granada Hills. Martinez, Arturo Cortez and a man named "Matches" were also hired for the same job, and Matches drove them to the site in his blue Continental. Martinez, Cortez and Matches left the job site at about 12:40 p.m. to go to lunch, but Quintero continued to work so he could leave early.
When the men returned at about 1:40 p.m., Matches allowed Quintero to borrow his car to drive home. Quintero agreed to *131 give Martinez and Cortez a ride. When police stopped the car, Martinez and Cortez became very nervous. Cortez handed a gun to Martinez, and Martinez took out a wallet and shoved it in the glove box.
Quintero had been interviewed by police a few days after the robbery and told a different story. He said that he had been hired with Martinez and Cortez to do some yard work on the day of his arrest. Martinez and Cortez left the job site on foot and later returned. They were stopped by police while driving home. Quintero never mentioned anyone named "Matches."

DISCUSSION

I.

Wheeler Motion
During voir dire, the prosecutor used four of her first eleven peremptory challenges to remove Hispanic jurors from the panel. Counsel for Martinez brought a motion to dismiss the venire under People v. Wheeler, supra, 22 Cal.3d at pp. 276-277, 148 Cal.Rptr. 890, 583 P.2d 748, arguing that the Hispanic jurors had been excused solely because of their ethnicity. We reject Martinez's claim that the court erred when it denied the motion.
A criminal defendant has a right to trial by a jury drawn from a representative cross-section of the community. A prosecutor may not exercise peremptory challenges to exclude jurors for presumed bias based solely on their membership in a particular racial or ethnic group. (Cal. Const., art. I, § 16; People v. Wheeler, supra, 22 Cal.3d at pp. 276-277, 148 Cal. Rptr. 890, 583 P.2d 748; see also U.S. Const., 6th & 14th Amends.; Batson v. Kentucky (1986) 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69, 82-83 (Batson).) Hispanics are a cognizable group for Wheeler purposes. (People v. Broum (1999) 75 Cal.App.4th 916, 924, 89 Cal. Rptr.2d 589.)
The trial court here found no prima facie case of group discrimination, a determination that we must uphold if it is supported by substantial evidence. (People v. Jones (1998) 17 Cal.4th 279, 293-294, 70 Cal.Rptr.2d 793, 949 P.2d 890; People v. Jackson (1992) 10 Cal.App.4th 13, 23, 12 Cal.Rptr.2d 541.) Because the resolution of a Wheeler motion is highly dependent upon the judge's personal observations of the attorneys and the prospective jurors, we approach the court's ruling with "`considerable deference.'" (People v. Crittenden (1994) 9 Cal.4th 83, 117, 36 Cal. Rptr.2d 474, 885 P.2d 887.) "If the record `suggests grounds upon which the prosecutor might reasonably have challenged' the jurors in question, we affirm." (People v. Hoivard (1992) 1 Cal.4th 1132, 1155, 5 Cal.Rptr.2d 268, 824 P.2d 1315.)
The record supports the trial court's finding that the prosecution had nondiscriminatory reasons for excusing the four Hispanic jurors. Juror L.A. had several family members who had been arrested, some of whom were prison. Juror P.V. had two convictions for driving under the influence and a brother with a hit-and-run conviction. Juror J.A.'s father had been arrested for spousal abuse. These contacts with the criminal justice system provided valid reasons for excluding these potential jurors. (See People v. Douglas (1995) 36 Cal.App.4th 1681, 1690, 43 Cal. Rptr.2d 129; People v. Allen (1989) 212 Cal.App.3d 306, 312, 260 Cal.Rptr. 463.) Additionally, Juror J.A. appeared unwilling to sit on the jury. He initially told the court that service would be a financial hardship because he would only be paid for five days of missed work, but later admitted that his employer had agreed to pay him for more time off if necessary. Reluctance to serve is another nondiscriminatory reason supporting a peremptory challenge. (People v. Walker (1998) 64 Cal. App.4th 1062, 1070, 75 Cal.Rptr.2d 871.)
The fourth Hispanic juror excused by the prosecution was Y.S., a single mother of two. She gave very short answers to the questions asked of her and indicated *132 she had never served on a jury, had never been arrested, had no family members who had been arrested, and did not know any police officers, lawyers or other court personnel. The prosecutor could have legitimately excused her because she lacked sufficient life experience. (See People v. Perez (1994) 29 Cal.App.4th 1313, 1328, 35 Cal.Rptr.2d 103.) Additionally, Juror Y.S. worked for Home Depot. Quintero claimed to have been hired for day work at a Home Depot on the morning of the robbery, and the prosecution might well have believed there was too close of a connection between the juror's employment and the facts of the case.
Martinez argues that reversal is required in spite of these nondiscriminatory reasons, because the trial court applied an erroneous legal standard when ruling on his Wheeler motion. He relies on the Ninth Circuit's recent decision in Wade v. Terhune (2000) 202 F.3d 1190, 1197 (Wade), which concluded that Wheeler sets an impermissibly high standard for establishing a prima facie case of discrimination under the federal equal protection clause and Batson v. Kentucky, supra, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69.
Both Wheeler and Batson established similar tests for trial courts to apply when determining the purpose behind a peremptory challenge. The first step of each test requires a defendant who suspects an improper challenge to lodge a timely objection and make a prima facie case of discrimination. (See People v. Wheeler, supra, 22 Cal.3d at pp. 280-281, 148 Cal.Rptr. 890, 583 P.2d 748; Batson v. Kentucky, supra, 476 U.S. at pp. 96-98, 106 S.Ct. 1712.) Once a prima facie case is made, the burden shifts to the prosecution to state adequate, nondiscriminatory reasons for the peremptory challenge. (Ibid.)
The California Supreme Court has repeatedly stated that a defendant must demonstrate a "`"strong likelihood"'" of discrimination to establish a prima facie case under Wheeler. (E.g., People v. Williams (1997) 16 Cal.4th 635, 663-664, 66 Cal.Rptr.2d 573, 941 P.2d 752; People v. Arias (1996) 13 Cal.4th 92, 134-135, 51 Cal.Rptr.2d 770, 913 P.2d 980; People v. Davenport (1995) 11 Cal.4th 1171, 1199-1200, 47 Cal.Rptr.2d 800, 906 P.2d 1068; People v. Turner (1994) 8 Cal.4th 137,164-165, 32 Cal.Rptr.2d 762, 878 P.2d 521.) Batson, on the other hand, requires only that the defendant "raise an inference" of a discriminatory purpose. (Batson v. Kentucky, supra, 476 U.S. at p. 96, 106 S.Ct. 1712; Wade v. Terhune, supra, 202 F.3d at p. 1195.)
The "inference" standard of Batson is more favorable to the defendant because it shifts the burden to the prosecution upon a less demanding initial showing of discrimination. (See People v. Bernard (1994) 27 Cal.App.4th 458, 464-466, 32 Cal.Rptr.2d 486 ["strong likelihood" more demanding standard than "reasonable inference"].) In Wade, the Ninth Circuit concluded that a defendant claiming a federal violation under Batson need only meet the less stringent "inference" standard to shift the burden to the prosecution. Thus, the state trial court's finding that a defendant failed to meet Wheeler's more onerous "strong likelihood" standard did not resolve the companion Batson issue. (Wade v. Terhune, supra, 202 F.3d at pp. 1196-1197.)
The Wade decision does not assist Martinez. As a federal habeas corpus proceeding, Wade involved the interpretation of federal, rather than state law. Martinez's trial counsel did not object to the prosecutor's exclusion of Hispanics on federal grounds, and has waived the federal aspect of his claim on appeal. (People v. McPeters (1992) 2 Cal.4th 1148, 1174, 9 Cal.Rptr.2d 834, 832 P.2d 146; People v. Ashmus (1991) 54 Cal.3d 932, 987, fn. 16, 2 Cal.Rptr.2d 112, 820 P.2d 214.) To the extent Wade suggests that the "strong likelihood" test of Wheeler is also inappropriate under the California Constitution, we are bound by our Supreme Court's contrary pronouncements on the subject. (See People v. Guiton (1993) 4 Cal.4th *133 1116, 1126, 17 Cal.Rptr.2d 365, 847 P.2d 45.)[2]
Even if we assumed that Martinez preserved a federal Batson claim, we would not reverse. Wade did not hold that automatic reversal is required under the federal constitution whenever a state court applies the "strong likelihood" standard to a Batson claim. Rather, the discrepancy between the two standards means that a trial court's finding under Wheeler is entitled to no deference when a reviewing court considers a challenge under Batson. The Wade panel accordingly reviewed the voir dire proceedings de novo when it considered the defendant's Batson argument, and determined that he had failed to establish a prima facie case of discrimination even under the more lenient federal standard. A de novo review of the voir dire in this case reveals ample reasons for dismissing the Hispanic jurors, and we conclude there was no "reasonable inference" of a discriminatory purpose. Martinez thus would not have prevailed had he raised a companion Batson claim in the trial court.
Quintero did not formally move for dismissal of the venire under Wheeler, but argues that his trial counsel was ineffective for failing to join in the motion brought by Martinez. Because the motion was lacking in merit, Quintero was not prejudiced by his counsel's omission. (See, e.g., People v. Butler (1995) 36 Cal.App.4th 455, 461-462, 42 Cal.Rptr.2d 279.)

II.

Penal Code Section 12022.53 Enhancement
Penal Code section 12022.53 mandates a ten-year sentence enhancement when the defendant "personally used a firearm" during the commission of an enumerated offense such as robbery. (§ 12022.53, subds. (a), (b) & (h).) Martinez argues that his section 12022.53 enhancement must be reversed because the evidence, while sufficient to identify him as one of the three robbers, did not support a finding that he was the gunman.
When considering a challenge to the sufficiency of the evidence supporting an enhancement, we review the record in the light most favorable to the judgment and draw all reasonable inferences in favor of the disputed finding. (See also People v. Tenner (1993) 6 Cal.4th 559, 567, 24 Cal.Rptr.2d 840, 862 P.2d 840; People v. Jones (1999) 75 Cal.App.4th 616, 631, 89 Cal.Rptr.2d 485; People v. Ortiz (1997) 57 Cal.App.4th 480, 484, 67 Cal.Rptr.2d 126.) Here, the evidence of Martinez's firearm use was not just sufficient, it was overwhelming.
The robbery victim, Bellasario Sosa, testified that Martinez was the gunman. This testimony was consistent with the curbside identification that Sosa made shortly after the robbery. Circumstantial evidence also supported the jury's finding that Martinez was the man who wielded the gun. Sosa testified that the gunman was sitting in the front passenger seat of the car when it pulled up to him. The evidence showed that when the police detained Martinez and his cohorts shortly after the robbery, Martinez was sitting in the front passenger seat and a gun was found under that seat.
Martinez argues that Sosa's identification was unreliable because it was made while he was still under great stress. As a reviewing court, it is not our place to *134 reweigh the evidence or substitute our assessment of a witness's credibility for that of the trier of fact. (See People v. Culver (1973) 10 Cal.3d 542, 548, 111 Cal.Rptr. 183, 516 P.2d 887.)

III.

Conflict of Interest
Quintero argues that he was deprived of his right to conflict-free counsel because he was represented at trial by a lawyer who had accepted a position with the district attorney's office. We reject the claim.
Private attorney Russell M. Rubin was Quintero's counsel of record when trial began. His associate, Kenneth Ma, appeared at several pretrial proceedings and represented Quintero on behalf of the Rubin law firm during trial. Rubin himself represented Quintero at sentencing, and Ma did not appear. At the outset of the sentencing hearing, the prosecutor advised the court that Ma had been hired as a deputy district attorney and was currently in a training, seminar for that office. Ma had informed her during a recent telephone conversation that he had accepted the job either before or during Quintero's trial, had advised Quintero of that fact, and that Quintero had not objected. Neither Quintero nor attorney Rubin responded to this statement by the prosecutor and the court made no inquiries. This was the first time the subject had been raised in the trial court.
The right to effective counsel under the federal and state constitutions includes the "right to representation that is free from conflicts." (People v. Bonin (1989) 47 Cal.3d 808, 834, 254 Cal.Rptr. 298, 765 P.2d 460; U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) Such conflicts "`embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his [or her] ... own interests.'" (People v. Clark (1993) 5 Cal.4th 950, 994, 22 Cal.Rptr.2d 689, 857 P.2d 1099.)
Under the federal constitution, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." (Cuyler v. Sullivan (1980) 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346-347, italics added.) Absent additional facts, an attorney does not create an actual conflict of interest by seeking or accepting employment with a prosecutorial agency while representing a criminal defendant. "Any conflict between an attorney's personal interest in obtaining employment and his or her client's interest in loyal and effective representation is too attenuated to impute a violation of professional ethics in each such case." (People v. Clark, supra, 5 Cal.4th at p. 997, 22 Cal.Rptr.2d 689, 857 P.2d 1099 [defense attorney ran for district attorney during pretrial phase of capital trialno actual conflict]; see also People v. Marshall (1987) 196 Cal.App.3d 1253, 1257, 242 Cal.Rptr. 319 [defense counsel accepted employment with district attorney's office before trial began]; Garcia v. Bunnell (9th Cir.1994) 33 F.3d 1193, 1198 [defense counsel accepted job with district attorney's office, to commence when trial ended].)
Quintero alternatively asks us to remand the case for a hearing on whether an actual conflict existed. He relies on Wood v. Georgia (1981) 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220, 230-231 (Wood), which established the rule that "[w]hen a trial court knows or should know that defense counsel has a possible conflict of interest with his [or her] client, it must inquire into the matter ... and act in response to what its inquiry discovers...." (People v. Jones (1991) 53 Cal.3d 1115, 1136, 282 Cal.Rptr. 465, 811 P.2d 757; see also Garcia v. Bunnell, supra, 33 F.3d at pp. 1199-1200 [information about counsel's new job with district attorney was not actual conflict requiring automatic reversal, but did trigger the court's duty to make further inquiries].)
*135 The court did not commit error under Wood. There is nothing in the record to suggest the court knew, or reasonably should have known, about a possible conflict at any time during the course of the trial. The issue was not raised until sentencing. By that time, Ma's representation of Quintero had ended, and any possible conflict had dissipated. The trial court was not obligated to make any additional inquiry under the circumstances.
We also disagree that reversal is required under state law. Under the California Constitution, "Regardless of an objection, `even a potential conflict may require reversal if the record supports "an informed speculation" that appellant's right to effective representation was prejudicially affected. Proof of an "actual conflict" is not required.'" (People v. Cox (1991) 53 Cal.3d 618, 654, 280 Cal. Rptr. 692, 809 P.2d 351.)
Assuming that Ma's prospective employment as a deputy district attorney was a potential conflict, the record does not suggest that it compromised Quintero's right to vigorous representation. Other than the failure to join in Martinez's unmeritorious Wheeler motion, Quintero does not challenge Ma's competency. Ma cross-examined witnesses, gave a vigorous closing argument, and elicited testimony from his client that established a plausible defense. There is no indication that Ma "`pulled his punches'" as a result of his future employment. (People v. Easley (1988) 46 Cal.3d 712, 725, 250 Cal.Rptr. 855, 759 P.2d 490.)

IV.

Denial of Counsel's Motion to Withdraw
Quintero argues that the trial court abused its discretion when it denied attorney Russell Rubin's pretrial motion to withdraw from the case, because the court's order effectively required Rubin to represent Quintero without compensation. We conclude the ruling was not prejudicial and did not create a conflict of interest.
Quintero was originally provided with court appointed counsel, who represented him during the preliminary hearing and the initial appearances in superior court. On June 8, 1999, Rubin substituted in as private counsel. On July 2, 1999, Rubin filed a motion to withdraw, on the grounds that he had been retained only to "settle" the case and had not been paid to go to trial. His declaration stated that Quintero's inability to pay his trial fees created a conflict of interest.
The court denied the motion, indicating that a substitution of counsel would cause an undue delay of the proceedings. The court was very critical of Rubin's fee arrangement: "I'm sure the state bar would [ ] be interested in something like that; that you're going to come in as counsel of record on a case just to settle it, and if you can't settle it, then you're just going to abandon your client." The court also stated that it did not allow "limited appearances," and would not have permitted Rubin's initial substitution into the case if it had been advised that he was being retained for settlement purposes only. Rubin clarified that Quintero's family had agreed to retain him for trial if the case did not settle, but had not come up with the money. Rubin remained on the case as attorney of record, and his associate, Kenneth Ma, represented Quintero at trial.
Quintero argues that the court's ruling was error under Mandell v. Superior Court (1977) 67 Cal.App.3d 1, 136 Cal. Rptr. 354. In Mandell, private counsel had been retained only to represent the defendant through the preliminary hearing. The trial court ordered counsel to remain on the case for trial, stating that his failure to specify that he was only making a "`special appearance'" at the preliminary hearing had left him "`on the hook'" for the trial. (Id. at p. 3, 136 Cal.Rptr. 354.) The court of appeal found this to be an abuse of discretion and issued a pretrial writ of mandate compelling the trial court to the grant the motion to withdraw. (Id. at p. 4, 136 Cal.Rptr. 354.)
Despite the similarities of the retainer agreement at issue, Mandell provides little *136 guidance That case involved a pretrial writ. Here, Rubin remained on the case as attorney of record during Quintero's trial. The trial court's denial of his motion to withdraw is moot unless Rubin's representation resulted in actual prejudice to Quintero. (People v. Castillo (1991) 233 Cal.App.3d 36, 57, 284 Cal.Rptr. 382.) As we have already discussed, Rubin's associate Kenneth Ma was an effective advocate.
Quintero argues that reversal is required because his non-payment of Rubin's fees created a conflict of interest. Inadequate compensation does not itself create a conflict requiring reversal. (People v. Castillo, supra, 233 Cal.App.3d at pp. 58-62, 284 Cal.Rptr. 382.) While there may be a basis for "an informed speculation of prejudice when a protesting defendant is forced to go to trial with unpaid counsel" (id. at pp. 62-63, 284 Cal.Rptr. 382), there is no indication here that Quintero wanted Rubin removed from his case.[3]
The judgment is affirmed.
GILBERT, P.J., and PERREN, J., concur.
NOTES
[1] Cortez was charged as a co-defendant, but entered a no contest plea before trial began. He is not a party to this appeal.
[2] In many cases, state constitutional provisions have been interpreted to afford greater rights to criminal defendants than their federal counterparts. (See People v. Fields (1996) 13 Cal.4th 289, 298, 52 Cal.Rptr.2d 282, 914 P.2d 832.) Sometimes, as here, the procedural burden of asserting a state constitutional right is more onerous than that placed on a defendant asserting a comparable federal right. (See Sema v. Superior Court (1985) 40 Cal.3d 239, 249-250, 219 Cal.Rptr. 420, 707 P.2d 793 [state speedy trial provision placed initial burden of demonstrating prejudice on defendant; prejudice was presumed under Sixth Amendment].)
[3] Rubin's written motion to withdraw merely represents that Quintero was not opposed to the request.